IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STEVEN YOUNG POUNCEY, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.1:12-cv848-MEF |
| ) | |
| ) | |
| CHRIS SUMMERLIN, SUSIE HELMS ) | |
| PETERS, TIM ELLISON, WILLIAM ) | |
| ASH, JESSE HESS, AND ADAM ) | |
| BLACKWELL, ) | |
| Defendants. ) | |
| ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

On August 19, 2013, Defendants in the above action filed a Motion for Summary Judgment with supporting exhibits.  (Doc. 52).  All named defendants are law enforcement officers who were or are employed by the Dothan City Police Department and their roles in the incident about which Plaintiff complains are explained below.  By Order of this court, Plaintiff was allowed until September 19, 2013 to file a response to the Motion.  (Doc. 53).  Plaintiff did not respond.  The court has carefully reviewed the Motion and the supporting briefs and evidentiary materials and concludes that the Motion for Summary Judgment is due to be GRANTED.

## II.     SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation omitted); Fed.R.Civ.P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-324.

Once the movant meets his evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is

properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine [dispute] for trial."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

To survive the plaintiff's properly supported motion for summary judgment, the defendant is required to produce "sufficient [favorable] evidence" "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*. Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Hence, when a nonmoving party fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to its case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

However, if there is a conflict in the evidence, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000).

While it would make the Court's job considerably easier if it could grant summary judgment in favor of a movant as a matter of course when a non-movant fails to respond to a summary judgment motion, the law of this Circuit does not permit such an approach. *See, e.g. Trustees of Cent. Pension Fund of Int'l Union of Operation Eng'rs & Participating Employers v. WolfCrane Serv. Inc.,* 374 F. 3d 1034, 1039-40(11th Cir. 2004); *United States v. One Piece of Prop. Located at 5800 S.W. 74ht Ave., Miami, Fla.* 363 F. 3d1099, 1101-02 (11th Cir. 2004). Indeed, a district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed. Nor can a district court deem a claim abandoned by a party absent some affirmative indication that she no longer wishes to pursue that claim. Rather, a court must conduct an independent review of the record and consider the merits of an unopposed summary judgment motion. *See Trustees,* 374 F. 3d at 1039-40; *One Piece of Real Prop.* 363 F. 3d at 1101-02. The record as a whole must establish the absence of genuine dispute of material fact before the court can enter judgment was a matter of law. *See One Piece of Real Prop.,* 363 F.3d at 1101-02.

While the district court is not required to "sua sponte review all of the evidentiary materials on file at the time the motion is granted . . . [it] must ensure that the motion itself is supported by evidentiary materials. *See id.* (citing *Dunlap v. Transamerica*

5

*Occidental Life Ins. Co.,* 858 F.2d 629. 632 (11th Cir.1988)). "At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment." *Id.* (citing *Jaroma v. Massey,* 873 F.2d 17, 20 (1st Cir. 1989).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard v. Banks,* 548 U.S. 521, 529 (2006); *Brown v. Crawford,* 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

### III. DISCUSSION

On June 21, 2012, Chris Summerlin ("Summerlin") performed a traffic stop on a van driven by Steven Pouncey ("Pouncey") for violation of the City of Dothan's noise ordinance. (Ex. A, Pouncey depo. p. 20; Ex. B, Summerlin affidavit.) Summerlin obtained Pouncey's identification and returned to his patrol car to issue the citations for violation of the noise ordinance and failure to wear a safety belt. (Ex. B, Summerlin affidavit ). Pouncey contends that when Summerlin returned to his police car "a whole bunch of them pulled up and they came to his car." (Ex. A, Pouncey depo. p.22). Summerlin had an in-car video that recorded the traffic stop; however, it does not have audio. The Court has viewed the video and it confirms that there were only three officers at the scene at the time of the arrest. (Ex. C, video). Officer William Ash was originally

dispatched as a backup unit for the traffic stop, but since Officer Miller and Officer Peters were in the area, Officer Ash's backup dispatch was cancelled. Thus, Officer Ash had no involvement with Mr. Pouncey's arrest on June 21, 2012. (Ex. O, Ash affidavit).

Officer Christopher Miller ("Miller"), who is not a named defendant in this action, parked behind Summerlin and approached Summerlin's car. Summerlin reported that Pouncey was irate, was moving around in the car and recommended that Miller use caution in approaching the van. (Ex. B, Summerlin affidavit; Ex. D, Miller affidavit). Miller approached the van and spoke to Pouncey. (Ex. C, video). Officer Susie Peters ("Peters") arrived at the scene and parked behind Miller. She remained in her car. (Ex. E, Peters affidavit). Pouncey was asked to step out of the vehicle several times by Miller before Summerlin then made his second approach to the van. Pouncey testified he was asked to exit his van several times by the officers and he refused to do so. (Ex. A, Pouncey depo. p.37). Pouncey testified that the police politely said "can you please step out of the car." (Ex. A, Pouncey depo. p.30).

The video tape shows Miller opening the driver's side door for Pouncey to step out, instead Pouncey closes the door. (Ex. C, video). Pouncey was then told he was under arrest. (Ex. A, Pouncey depo. p. 38, Ex. B, Summerlin affidavit, Ex. D, Miller affidavit). Summerlin then pointed his Taser at Pouncey and told him to get out of the car and again Pouncey refused. (Ex. A, Pouncey depo. p.30-31, Ex. B, Summerlin affidavit, Ex. D, Miller affidavit). Instead of complying with the orders, Pouncey put the van in drive and started to drive off. Summerlin fired his Taser at Pouncey through the open driver's side window. (Ex. B, Summerlin affidavit, Ex. D, Miller affidavit, Ex. C,

7

video).  Summerlin ran beside the van, then hung on the driver's door to steer the van away from any oncoming traffic.  (Ex. C, video).  Peters heard Summerlin yell and she pursued the van on foot.  (Ex. E, Peters affidavit, Ex. C video).

Summerlin steered the van into a driveway and put it in park.  Pouncey refused to submit to arrest and moved away from Summerlin toward the passenger door.  (Ex. B, Summerlin affidavit).  Peters was at the passenger side of the van and saw Pouncey coming toward her.  She fired her Taser at him through the open passenger window.  This appeared to have no effect on Pouncey.  Peters then opened the van door and pulled Pouncey out onto the ground.  (Ex. E, Peters affidavit).  Pouncey did not quit resisting. Summerlin came around the vehicle and began to struggle with Pouncey and attempted to hold his legs down.  Summerlin then used his Taser to "drive stun" Pouncey on his buttocks.  Summerlin and Miller then handcuffed Pouncey. (Ex. E, Peters affidavit; Ex. B, Summerlin affidavit; Ex. D, Miller affidavit).  The officers noticed Pouncey had been struck in the neck with a Taser lead, and called fire medics to evaluate him.  (Ex. B, Summerlin affidavit).

Officer Adam Blackwell (hereinafter "Blackwell") arrived at the scene after the arrest.  Pouncey was handcuffed and standing beside the van.  (Ex. F, affidavit Blackwell).  Blackwell began directing traffic around the police cars in the road and the fire truck which had arrived.  He had no physical contact with Pouncey.  (Ex. F, affidavit Blackwell; Ex. B, affidavit Summerlin, Ex. D, affidavit Miller; Ex. E, affidavit Peters, Ex. C, video.)

When the fire medics arrived Pouncey refused to talk to them. (Ex. B, affidavit Summerlin; Ex. E, affidavit Peters). Officers then called an ambulance to transport Pouncey to the hospital for evaluation. Sargent Tim Ellison arrived at the scene while Pouncey was being loaded into the ambulance. Ellison was not present during the arrest and had no contact with Pouncey. (Ex. G, affidavit Ellison; Ex. B, affidavit Summerlin; Ex. D, affidavit Miller; Ex. E, affidavit Peters; Ex. C, video.) The ambulance left the scene to transport Pouncey to the hospital.

Officer Jess Hess (hereinafter Hess) was dispatched to the Southeast Alabama Medical Center to meet the ambulance that transported Pouncey to the hospital. (Ex. H, affidavit Hess.) Hess was not at the scene of the arrest and had no interaction with Pouncey at the hospital. (Ex. H, affidavit Hess; Ex. B, affidavit Summerlin; Ex. E, affidavit Peters). After Ellison arrived at the hospital he spoke to the officers for a short time and left. (Ex. G, affidavit Ellison).

At the hospital Pouncey became combative and began yelling, cussing, and threatening the officers and medical staff. Summerlin verbally warned Pouncey if he did not calm down he would be tased. Summerlin did not remove his Taser from its holster. Pouncey was then handcuffed to the bed in order to restrain him. (Ex. B, affidavit Summerlin).

The medical staff removed Taser leads from Pouncey's neck, upper arm, and two from his shirt. The leads were removed by the medical staff using their fingers and treated with Neosporin and a Band-Aid. His X-rays were normal and his discharge instructions noted he suffers from schizophrenia and during his evaluation Pouncey's

9

mood was psychotic.  (Ex. I).  During his deposition Pouncey was asked whether he was suffering from a schizophrenic episode and his response was he was spiritual.  (Ex. A, Pouncey depo. pp. 82-83 ).  Pouncey also testified that he did not take any medication for his schizophrenia.  (Ex. A, Pouncey depo. p.11).

Mr. Pouncey was then transported to the Dothan City jail where he was booked on the charges of resisting arrest, obstructing governmental operations, attempting to elude, noise ordinance and a seatbelt ticket.  Pouncey was convicted on all charges on August 8, 2013.  (Ex. J, noise ordinance violation; Ex. K, seat belt ticket; Ex. L, attempting to elude; Ex. M, obstruction governmental operations; Ex. N, resisting arrest.)

In his complaint as amended, Pouncey describes two separate incidents wherein he alleges that certain members of the Dothan City Police Department violated his constitutional rights.  (Doc. 1, Complaint p. 2).  Specifically, he claims violations occurred on October 5, 2005 and June 21, 2012.  The October 5, 2005 alleged violations are clearly outside the statute of limitations, and thus, will not be addressed by this Court. *See, McNair v. Allen,* 515 F.3d 1168, 1173 (11th Cir. 2008)(Constitutional claims brought under 42 U.S.C.§1983 are tort actions subject to the personal injury statute of limitations of the state where the action is brought; in Alabama that statute is two years. *Id.; Ala. Code* § 6-2-38 (1975)).  The Complaint, as amended, alleges violations of Pouncey's First Amendment, Fourth Amendment, Fifth Amendment, Sixth Amendment and Eighth Amendment rights.  The supporting factual allegations are sparse and in some instances nonsensical.  (Doc. 5, Amended Complaint p.1).  Nevertheless, the Court will address the claims and factual allegations as presented by Pouncey.

### A.     First Amendment Claim

Pouncey alleges "[m]y first amendment right was violated when he threatened me with a taser holding it to my side while handcuffed to the bed at the hospital." (Doc. 5). The First Amendment states as follows:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or the press; or the right of people peaceably to assemble, and to petition the Government for a redress of grievances.

At the hospital Pouncey began yelling, cussing and threatening the officers and medical staff. Summerlin admits he warned Pouncey he would be tased if he did not calm down, but he did not remove his Taser from its holster. (Ex. B, Summerlin affidavit p. 5). Summerlin's actions in warning Pouncey to calm down do not constitute a First Amendment violation. Accordingly, the Court concludes that Plaintiff fails to create a genuine issue of material fact on his First Amendment claim and summary judgment is due to be granted in favor of the defendants on this claim.

### B.  Fourth Amendment Claim

Pouncey alleges the defendants violated his Fourth Amendment rights by using excessive force against him during his arrest on June 21, 2012. Since Pouncey claims excessive force in the course of an arrest, the court analyzes his claim under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 388 (1989). In deciding whether a police officer used excessive force, the court must pay "careful attention to the facts and circumstances" of the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

11

officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396 (citing *Tennessee v. Garner,* 471 U.S. 1, 8-9 (1985)).

In determining if the force used was reasonable under the circumstances the court will look at: (1) the need for the application of force; (2) the relationship between the need and the force used; and, (3) the extent of the injury inflicted. *Vinyard v. Wilson,* 311 F. 3d 1340, 1347 (11th Cir. 2002). This requires analysis of factors including the severity of the crime, if the suspect poses an immediate threat to the officers or other individuals and if the suspect is actively resisting arrest or attempting to evade the arrest by flight. *Graham,* 480 U.S. at 396; *Vinyard,* 311 F.3d at 1347. "[T]the right to make an arrest or investigatory stop necessarily carries with it the use of some degree of physical coercion or threat thereof to affect it." *Graham,* 490 U.S. at 396. The "use of force must be judged by a case-by case basis from the perspective of a reasonable officer at the scene rather than with 20/20 vision of hindsight." *Vinyard,* 311 F. 3d at 1347.

In this case Pouncey had been legally stopped. Summerlin obtained his driver's license to issue him two citations, one for a noise ordinance violation and one for failure to wear his safety belt. (Ex. B, affidavit Summerlin). Two officers asked him to exit the vehicle, which is legally permissible pursuant to *Arizona v. Johnson,* 555 U.S. 323, 330-1, 129 S.Ct. 781 (2009). Pouncey refused to get out of his car. (Ex. A, Pouncey Depo. p.29). The video shows Miller opening Pouncey's driver door so he could get out and Pouncey shut the door back. (Ex. C, video.). After refusing several orders to get out of

12

the van, Pouncey was told he was under arrest.  (Ex. A, Pouncey depo. p. 38; Ex. B affidavit Summerlin; Ex. D, affidavit Miller.)

Summerlin got out his Taser and held it by his side and continued to ask Pouncey to step out of the van.  Summerlin then told Pouncey he was under arrest and again Pouncey ignored him. Summerlin pointed his Taser at Pouncey and ordered him out of the van.  Pouncey began to drive away and Summerlin fired his Taser at Pouncey through the driver's side window.  The video shows Summerlin running alongside Pouncey's van, his hands in the side window, as he steered the van over to the side of the road.  (Ex. C, video; Ex. B, Summerlin affidavit; Ex D, Miller affidavit).

After Summerlin got the van stopped Pouncey refused to submit to arrest.  (Ex. B, Summerlin affidavit; Ex. E, Peters affidavit).  He again tried to escape from Summerlin by moving toward the passenger side door of the van.  (Ex. B,  Summerlin affidavit; Ex. E, Peters affidavit).  Peters was at the passenger side of the van when Pouncey came at her.  Peters fired her taser at Pouncey to stop him.  This had no apparent effect on Pouncey.  (Ex. E, affidavit Peters).  When Peters' taser did not stop Pouncey, she opened the door and pulled him out of the vehicle on to the ground.  (Ex. E,  Peters affidavit; Ex.B Summerlin affidavit).  Pouncey refused to submit to arrest and continued to resist.  Summerlin used his Taser to drive-stun Pouncey on the buttocks.  (Ex.   B Summerlin affidavit).   Miller and Summerlin then handcuffed Pouncey. (Ex. B, Summerlin affidavit).  Pouncey made no other allegations that any officer used force against him after he was secured in handcuffs.  (Complaint).

Summerlin's use of his Taser to stop Pouncey, who was neither restrained nor under control, from driving away and fleeing arrest was reasonable. Pouncey's actions put Summerlin in danger as he could have fallen while running and been trapped under or run over by the van. Further, Pouncey's actions could have put the general public in danger if, Summerlin had been unable to stop the van, and a car chase had ensued. *Vinyard,* 311 F. 3d at 1347. Also, Peters use of the Taser was reasonable when Pouncey, continuing to resist arrest, moved away from Summerlin toward the passenger side of the door and came at Peters who was positioned on that side of the van. *See Mann v. Taser International,* 588 F.3d 1291 (11th Cir. 2009)(Use of a taser did not constitute excessive force when the plaintiff refused to comply with officer's request and her behavior was violent, aggressive and prolonged.)

Pouncey further alleges that the officers "sexual[ly] assaulted [him] by putting the taser in my butt at my anus and genitals". (Doc. 5). The evidence demonstrates that Summerlin used the taser to "drive stun" Pouncey on the buttocks as he continued to resist arrest and as Summerlin was attempting to hold Pouncey's legs down and to get him handcuffed. Under the circumstances Summerlin's actions were not unreasonable. (Ex. E, Peters affidavit; Ex. B, Summerlin affidavit; Ex. D, Miller affidavit). *See Manning v. Moore,* 2012 WL 3879281 *8 (M.D. Ala.)(Use of a taser on a "relatively safe area of the body (the buttocks)" was not excessive force where an officer used the taser on plaintiff as he and another officer went to the ground during a struggle). Moreover, the evidence demonstrates that the extent of Pouncey's injuries were minor. Indeed, the medical staff removed taser leads from Pouncey's neck, upper arm, and two from his

shirt. The leads were removed by the medical staff using their fingers and treated with Neosporin and a Band-Aid. His X-rays were normal. (Ex. I). Additionally, there is no evidence that Pouncey complained to the medical staff about any injury to his buttock area. Thus, the court concludes that the officers' actions against Pouncey during the course of his arrest were reasonable. *Vinyard,* 311 F. 3d at 1347. Accordingly, the Court concludes that Plaintiff fails to create a genuine issue of material fact on his excessive force claim and summary judgment is due to be granted in favor of the defendants on this claim.

## C.  Sexual Assault Claim

Pouncey alleges he was sexually assaulted by the officers in the course of his arrest. (Doc. 5). It is clear that both federal and state law recognize a right under the due process clause of the Fourteenth Amendment to be free from sexual abuse by state actors. *See Wilson v. Doss,* 2012 WL 5877854 (M.D. Ala.); *C.B. v. Bobo,* 659 So.2d 98, 104 (Ala. 1995)(both cases involve sexual assault or abuse of children by state actors.) However, the case at bar involves a suspect, who while resisting arrest and struggling on the ground with a police officer, was tased or touched in the area of his buttocks. (Ex. E, Peters affidavit; Ex. B, Summerlin affidavit; Ex. D, Miller affidavit). The evidence demonstrates that although Pouncey was tased or touched in the area of the buttocks, he did not complain to medical staff of any injury or touching to his buttocks area. (Ex. A, Pouncey depo. p. 45; Ex. I). Further the medical records demonstrate that no treatment was provided for this area; although other tased areas were treated. (Ex. I). Accordingly, the Court concludes that Plaintiff fails to create a genuine issue of material fact on his

sexual assault claim and that summary judgment is due to be granted in favor of the defendants on this claim.

## D.  Fifth Amendment Claim

Pouncey alleges that his Fifth Amendment rights were violated "with outragwous claims and fines." (Doc 5). Pouncey makes no additional factual allegations and fails to name any specific defendant who allegedly violated his Fifth Amendment rights. The Fifth Amendment states as follows:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury, except in cases arising in the land or novel forces or in the military, when in actual service in time of war or probable danger, nor shall any person be subject for the same offenses to be twice put in jeopardy of life or limb, nor shall be compelled in any criminal case to be a witness against himself, nor to be deprived of life, liberty, or property, without due process of law, nor shall private property be taken for public use without just compensation.

Pouncey testified in his deposition that he believes his Fifth Amendment rights were violated because the officers did not have a warrant for his arrest, ( Ex. A, Pouncey depo. p. 68) and the police department's advisory to use caution when dealing with him constituted a violation of double jeopardy. (Ex. A, Pouncey depo. p. 71).

Under Alabama law, Officer Summerlin did not need a warrant to write Pouncey a citation for the noise ordinance or the seat belt ticket. Pouncey was arrested on misdemeanor charges and under Alabama law the officer does not need a warrant if the act occurred in his presence. *Ala. Code* § 15-10-3 (1975). On August 8, 2013, Pouncey was convicted on all the charges brought against him by Summerlin during this event.

(Ex. J, noise ordinance violation; Ex. K, seat belt ticket; Ex. L, attempting to elude; Ex. M, obstruction governmental operations; Ex N, resisting arrest.)  Thus, Pouncey fails to demonstrate a Fifth Amendment violation for the officers' failure to have a warrant for his arrest.  Furthermore, Pouncey fails to demonstrate how the police department's issuance of an advisory caution against him constituted double jeopardy.  Accordingly, the Court concludes that Plaintiff fails to create a genuine issue of material fact on his Fifth Amendment claim and summary judgment is due to be granted in favor of the defendants on this claim.

**E.  Sixth Amendment Claim**

Pouncey alleges a violation of his Sixth Amendment rights.  The Sixth Amendment states as follows:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed; which district shall have been previously ascertained by law and be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor and to have the assistance of counsel for his defense.

Pouncey states his Sixth Amendment rights were violated "when those in secret sent me a false ticket along with a different court date for the same case (the seat belt ticket).  The police officer also said he was gonna lie in court by saying I was on drugs among other things." (Doc. 5).  When asked during his deposition how his Sixth Amendment rights were violated Pouncey alleges that the jail did not give him documents that informed him he had "a seat belt violation or a music violation." (Ex. A, Pouncey depo. p. 75).  When

17

asked how the defendant officers violated his Sixth Amendment rights he stated "[t]he police Department, they didn't – it was the police department." (Ex. A, Pouncey depo. p.76). The evidence before the court establishes that Plaintiff refused to sign the citation for the noise ordinance violation. The signature on the citation reads "in jail would not sign". (Ex. J, noise ordinance violation). Furthermore, the Plaintiff signed for his subpoenas each time the cases were continued. (Ex. J, noise ordinance violation; Ex. K, seat belt ticket; Ex. L, attempting to elude; Ex. M, obstruction governmental operations; Ex. N; resisting arrest.) Thus, the Court concludes that Plaintiff fails to create a genuine issue of material fact on his Sixth Amendment claim and summary judgment is due to be granted in favor of the defendants on this claim.

**F. Eighth Amendment Claim**

The Plaintiff also alleges a violation of his Eighth Amendment rights. The Eighth Amendment states as follows:

> Excessive bail shall not be required, nor excessive fines imposed, nor shall cruel and unusual punishment be inflicted.

In support of this allegation, Pouncey points to the incidents he recounts in his complaint that occurred in 2005 and 2012. As this Court has previously stated, the October 5, 2005 alleged violations are not before it because they are clearly outside the statute of limitations. *See, McNair v. Allen,* 515 F.3d at 1173. With respect to the 2012 incident, the court reads Pouncey to complain of the force used during his arrest. The claim has been previously addressed and dismissed by this court in the section dealing with the Fourth Amendment. Indeed, "[t]he cruel and unusual punishment clause was designed to

protect those convicted of crimes." *Ingraham v. Wright,* 430 U.S. 651, 644, 97 S. Ct. 1401, 1408 (1977) and consequently the clause applies only after the state has complied with constitutional guarantees traditionally associated with criminal prosecutions." *Whitley v. Albers,* 475 U.S. 312, 318, 106 S. Ct. 1078, 1083 (1986). Thus, the Court concludes that Plaintiff fails to create a genuine issue of material fact on his Eighth Amendment claim and summary judgment is due to be granted in favor of the defendants on this claim.

G. **Qualified Immunity**

The defendants have argued that they have qualified immunity for their actions about which Pouncey complains. Pouncey has the burden of demonstrating that the defendants are not entitled to qualified immunity. *See Lewis v. City of West Palm Beach,* 561 F.3d 1288, 1291 (11th Cir. 2009). Pouncey has failed to produce any evidence or argument from which this court might conclude that defendants are not entitled to qualified immunity. Thus, Pouncey has failed to uphold his burden. Thus, the Court concludes that summary judgment is due to be granted in favor of the defendants on all claims.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons, it is the **RECOMMENDATION** of the Magistrate Judge that Defendants' Motions for Summary Judgment (Doc. 52) be **GRANTED** and that case be dismissed with prejudice. It is further **ORDERED** that the parties are **DIRECTED** to file any objections to the said Recommendation not later than **February 27, 2014.**

Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable. Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 10th day of February, 2014.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE